ERNEST GALVAN – 196065
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: egalvan@rbgg.com
        mnunez@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA COUNCIL OF THE BLIND; ALICE "MARGIE" DONOVAN; ROGER OBERHOLZER; and SHANNON DILLON,<br><br>            Plaintiffs,<br><br>    v.<br><br>CINEMA WEST, LLC; PALLADIO CINEMAS, LLC<br><br>            Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Trial Date:      None Set |

# INTRODUCTION

1. This action seeks to end Palladio Cinemas LLC ("Palladio Cinemas") and Cinema West LLC's ("Cinema West") violation of Plaintiffs' civil rights. Defendants are denying Plaintiffs full and equal access to the services it offers at the Palladio 16 Cinemas ("Palladio 16") movie theater located in Folsom, California.

2. Many individuals who are blind or visually-impaired enjoy watching films in theaters. Blind moviegoers need audio description technology to understand movies. Audio description is an audio track that contains a verbal description of the key visual aspects of movies, such as scene changes, reading of subtitles and other on-screen text, and important nonverbal conduct. To use audio description at Palladio 16 and other theaters, a blind individual wears a headset connected to a wireless receiver that plays a prerecorded audio track containing the verbal descriptions synchronized with playback of the movie. Movie studios create the audio description tracks and provide them to Palladio 16 and other theaters.

3. Defendants are excluding Plaintiffs from full and equal access to their services at Palladio 16 by failing to provide and maintain functional audio description technology and services. As a result, Plaintiffs have been denied access to audio description services at Palladio 16.

# JURISDICTION

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA").

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent claims under the California Unruh Civil Rights Act (California Civil Code §§ 51, *et seq.*), and the Disabled Persons Act (California Civil Code §§ 54-54.3).

# VENUE

6. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)-(d).

7. Defendants Palladio Cinemas and Cinema West are registered to do business in California and do business in the Northern District of California. Defendants own and operate movie theaters throughout California, including at least six movie theaters in the Northern District of California.

8. Defendants are subject to personal jurisdiction in the Northern District of California.

9. Plaintiff California Council of the Blind has many members who reside in the Northern District of California.

**PARTIES**

10. Plaintiff California Council of the Blind ("CCB") is a nonprofit corporation and an association of blind Californians. It is the California state affiliate of the American Council of the Blind. CCB's mission is to increase the independence, security, equality of opportunity, and quality of life for all Californians who are blind or visually-impaired. CCB seeks to ensure that culture, laws, programs, and attitudes are inclusive of persons who are blind or visually-impaired. Access to fundamental American cultural activities, such as movie-going, is critical to CCB and its members. Securing access to services at Palladio 16 advances CCB's goal to promote integration of the blind into society on a basis of equality by enabling blind individuals to enjoy movies, engage with popular culture, and go to the theater with friends and family, in the same way that many sighted individuals do. CCB is a membership organization, and Defendants have failed to provide functional audio description services to members of CCB. CCB sues on behalf of its members who have been denied audio description at Palladio 16.

11. Plaintiff ALICE "MARGIE" DONOVAN ("Donovan") is blind, resides in Folsom, California, and is a member of CCB. Defendants have denied Ms. Donovan the full use and enjoyment of the services, privileges, facilities, and advantages of Palladio 16 on several occasions.

12. Plaintiff ROGER OBERHOLZER ("Oberholzer") is blind and resides in Folsom, California. Defendants have denied Mr. Oberholzer the full use and enjoyment of

1   the services, privileges, facilities, and advantages of Palladio 16 on several occasions.

2   13.   Plaintiff SHANNON DILLON ("Dillon") is blind and resides in Folsom,
California. Defendants have denied Ms. Dillon the full use and enjoyment of the services,
privileges, facilities, and advantages of Palladio 16 on several occasions.

14.   Defendant PALLADIO CINEMAS LLC is registered to do business in
California. On information and belief, Palladio Cinemas owns and/or operates Palladio 16.

15.   Defendant CINEMA WEST, LLC is registered to do business in California.
Cinema West's website identifies Palladio 16 as a Cinema West theater. Upon information
and belief, Cinema West is a required party pursuant to Federal Rule of Civil Procedure
19(a)(1) because in their absence the Court cannot accord complete relief from Palladio
Cinemas alone.

## FACTUAL ALLEGATIONS

16.   The primary service that Palladio Cinemas and Cinema West offer to the
general public at Palladio 16 is screening movies. To make movies accessible to
individuals who are blind and to provide blind customers an experience comparable to that
of sighted patrons, Defendants represent to the public that they offer audio description at
Palladio 16 Cinemas. Plaintiffs Donovan, Oberholzer, and Dillon have each on more than
one occasion made plans to enjoy movies at Palladio, and arrived at the theater only to find
that Defendants' representations were false and that they had wasted their time and money
because the audio description devices were not working.

17.   Properly functioning audio description technology provides an audio track
containing descriptions of the visual elements of the film and is synchronized with the
film's audio track. Most major film studios release wide-release movies with audio
description tracks. Audio description tracks are available for most wide-release films
exhibited at Palladio 16.

18.   Defendants have the technology needed to provide audio description to
Plaintiffs. To provide audio description at Palladio 16 Cinemas, theater staff provide a
blind customer with a battery-powered headset with earphones and a built-in wireless

receiver. A transmitter at the theater sends the audio description track wirelessly to the receiver. The headset also contains a headphone jack to which the blind customer can connect his or her own headphones. For the audio description service to function properly, the headset receiver must have sufficient battery power and must be programmed to wirelessly receive the audio track for the specific movie the individual has bought a ticket to watch. Other necessary components of the theater's audio description equipment, such as the transmitter, must function properly as well.

19. Plaintiffs have repeatedly found that audio description devices that staff at Palladio 16 issue to them do not work. In some instances, audio description receivers appear not to function at all. In other cases, the audio description receivers provide such poor sound quality that Plaintiffs miss out on portions of their movie because they can only hear some of the audio description track.

20. Plaintiffs are unable to determine whether their audio description devices are functioning properly until their movies begin. Consequently, when Plaintiffs have discovered that their audio description devices are malfunctioning, Plaintiffs were forced to choose between leaving the movie auditorium to seek out staff assistance, or sit and watch the movie without audio description, missing significant aspects of the movie that are not apparent from the dialogue.

21. This case arises out of Defendants' policy and practice of denying Plaintiffs access to its movie showings, through its failures to provide and properly maintain functioning audio description devices. Plaintiffs have repeatedly been unable to fully and equally enjoy movies at Palladio 16 with audio description because Defendants fail to properly provide, maintain, and operate audio description devices. These failures deny Plaintiffs full and equal access to Defendants primary service: screening films for the public to enjoy.

**Shannon Dillon and Roger Oberholzer**

22. Plaintiffs Roger Oberholzer and Shannon Dillon enjoy regularly attending movies. They wish to watch movies at Palladio 16 because this theater is conveniently

1  located for them.

2  23.  On January 22, 2019, Ms. Dillon and Mr. Oberholzer visited Palladio 16 to watch *Replicas* with their neighbor and her daughter. They requested use of audio description services. Theater staff issued Mr. Oberholzer and Ms. Dillon each an audio description headset receiver. However, neither receiver worked. Ms. Dillon and Mr. Oberholzer's neighbor left the auditorium to report the problem to theater staff, and staff issued Mr. Oberholzer and Ms. Dillon each a replacement audio description headset. However, neither of the replacement headsets worked. Ms. Dillon and Mr. Oberholzer again sought assistance from staff. Staff issued Ms. Dillon and Mr. Oberholzer each a third audio description headset, but neither of these headsets worked either. The group left the theater without seeing the movie.

24.  In November 2018, Ms. Dillon and Mr. Oberholzer visited Palladio 16 to watch *The Grinch*. They requested use of the audio description service. Theater staff issued each of them an audio description receiver headset. However, neither headset worked. They requested replacement audio description headsets, and staff provided Ms. Dillon and Mr. Oberholzer each with a replacement audio description headset. However, the replacement audio description headsets did not work either. As a result, they left the theater without seeing the film.

25.  In Fall 2018, Mr. Oberholzer and Ms. Dillon visited Palladio 16 with their neighbor and her daughter to see *The House with a Clock in Its Walls*. Ms. Dillon and Mr. Oberholzer requested use of the audio description service. Staff provided Ms. Dillon and Mr. Oberholzer each with audio description receiver headsets, but neither headset worked. As a result, they left the theater without seeing the movie.

26.  On December 3, 2017, Ms. Dillon, Mr. Oberholzer, and Ms. Donovan visited Palladio 16 to watch *Murder on the Orient Express*. They requested use of the audio description service. Staff issued each of them audio description receiver headsets, but the headsets did not provide any audio description. After about 30 minutes, one of the three headsets provided audio description, but the sound quality was so poor that it was not

1  usable. Because theater staff could not provide Ms. Donovan, Ms. Dillon, and
2  Mr. Oberholzer with access to audio description, the three left the theater and went to a
3  different theater where they were able to watch *Murder on the Orient Express* with audio
4  description.

5      27.    Ms. Dillon and Mr. Oberholzer have been denied access to audio description
6  on other occasions at Palladio 16 as well. Ms. Dillon and Mr. Oberholzer now often
7  choose to attend other theaters rather than the Palladio 16 because they know that they are
8  more likely to obtain functional audio description services from other theaters.

**Margie Donovan**

10      28.    Plaintiff Margie Donovan enjoys regularly attending movies a movie
11  theaters. She wishes to access movies at Palladio 16 because it is conveniently located, it
12  is easier to navigate to than other theaters, it has reclining chairs, and she likes the food
13  options.

14      29.    On December 1, 2018, Ms. Donovan visited Palladio 16 to watch *Bohemian*
15  *Rhapsody* with her partner. She requested use of audio description services. The staff
16  issued Ms. Donovan an audio description receiver headset. However, the sound quality of
17  the audio description provided through the headset was so poor that Ms. Donovan was
18  unable to hear the audio description for several portions of the movie.

19      30.    On June 10, 2018, Ms. Donovan and her partner visited Palladio 16 to watch
20  *Adrift*. Ms. Donovan requested use of audio description services. Staff provided
21  Ms. Donovan with an audio description receiver headset. However, the headset did not
22  work. Ms. Donovan conferred with theater staff to troubleshoot the problem, and staff
23  eventually informed Ms. Donovan that they could not provide her with audio description
24  service because the audio description equipment in the auditorium showing *Adrift* was
25  malfunctioning. As a result, Ms. Donovan had no choice but to travel to a different theater
26  to watch *Adrift* with audio description.

27      31.    On January 10, 2018, Ms. Donovan visited Palladio 16 with her
28  granddaughter to watch *Ferdinand*. She requested use of the audio description service.

1  Staff issued her an audio description receiver headset.  However, the headset did not work.
2  Ms. Donovan conferred with staff to attempt to resolve the problem.  However, staff were
3  unable to resolve the problem with the audio description equipment.  As a result,
4  Ms. Donovan was unable to access audio description for the movie.

5  32.  On October 6, 2017, Ms. Donovan visited the Palladio 16 with her partner to
6  watch *Victoria and Abdul*.  She requested use of the audio description service.  Staff issued
7  her an audio description receiver headset, but the headset that they issued to her did not
8  work.  As a result, she was unable to use audio description services to watch *Victoria and*
9  *Abdul*.

10  33.  On September 4, 2017, Ms. Donovan visited Palladio 16 with her partner to
11  watch *Dunkirk*.  She requested use of the audio description service.  Staff issued her a
12  headset, but it did not work.  Theater staff informed Ms. Donovan that the malfunctioning
13  headset could not be replaced.  As a result, Ms. Donovan was unable to watch *Dunkirk*
14  with audio description. *Dunkirk* is a movie with almost no dialogue; almost all of the
15  content is visual.

16  34.  On March 26, 2017, Ms. Donovan visited Palladio 16 to watch *The Shack*.
17  She requested use of the audio description service.  However, the audio description
18  equipment did not work, so she was unable to watch the movie with audio description.

19  35.  Ms. Donovan has attempted to access audio description services at Palladio
20  16 on other occasions as well.  Ms. Donovan now often chooses to attend other theaters
21  rather than Palladio 16 because she knows that she is more likely to obtain functional
22  audio description services from other theaters.

**FIRST CLAIM FOR RELIEF**
**Violation of Title III of the Americans with Disabilities Act**
**(42 U.S.C. §§ 12101, *et seq*. – Against All Defendants)**

25  36.  Plaintiffs re-allege and incorporate by reference herein all allegations
26  previously made above.
27  37.  Title III of the ADA prohibits discrimination on the basis of disability in the
28  full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of places of public accommodation. 42 U.S.C. § 12182.

38. Defendants own or operate Palladio 16, which is a place of public accommodation within the statutory definition. 42 U.S.C. § 12181(7)(C).

39. Under Title III, entities that own, operate, lease, or lease to places of public accommodation must take the steps necessary to ensure that no individuals with disabilities are excluded, denied services, or otherwise treated differently than others because of the absence of auxiliary aids and services, unless doing so would fundamentally alter the services provided or create an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

40. Audio description is an auxiliary aid under Title III of the ADA. Defendants have violated Title III by failing to take the steps necessary to ensure that blind and visually-impaired persons are not excluded from their movie-showing services because of the absence of audio description.

41. Movie theaters are required to provide audio description whenever the theater exhibits a digital movie that is distributed with the audio description service. 28 C.F.R. § 36.303(g)(2). Movie theaters are required to properly maintain each audio description device to ensure that each device is fully operational, available to patrons in a timely manner, and easily usable by patrons. *Id.* § 36.303(g)(5). Theaters must also ensure that at least one employee is available to assist patrons with using audio description whenever a digital movie is exhibited with audio description. *Id.*

42. Defendants violate these requirements by issuing malfunctioning audio description devices to Plaintiffs and by failing to ensure that Plaintiffs can easily use audio description devices. Defendants also violate these requirements by failing to ensure that staff members on-site were knowledgeable regarding operation and resolving problems with audio description equipment during Plaintiffs' movies.

43. Title III prohibits entities that own, operate, lease, or lease to places of public accommodation from denying an individual or class of individuals with disabilities the opportunity to participate or benefit from the goods, services, facilities, privileges,

advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

44. Title III prohibits entities that own, operate, lease, or lease to places of public accommodation from affording an individual or class of individuals with disabilities the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

45. By failing to provide and maintain a functional audio description system, Defendants are excluding Plaintiffs from participating in and benefiting from the goods, services, facilities, privileges, advantages, and accommodations of Palladio 16, in violation of Title III.  defendants further violate Title III because they are providing Plaintiffs with a movie-going experience that is not equal to that afforded to other individuals when its audio description devices malfunction and when staff fail to properly configure the devices.

46. Additionally, public accommodations must maintain in operable working condition those features of equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211.

47. Although Defendants purport to have the necessary equipment to provide an accessible movie-going experience to Plaintiffs, they fail to maintain this equipment in operable working condition, in violation of Title III.

48. It is a violation of Title III for entities that own, operate, lease, or lease to places of public accommodation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the modification would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

49. By failing to modify practices, policies, and procedures to ensure that audio description equipment is maintained and fully functional and that employees know how to set up equipment and monitor audio description equipment, Defendants are violating Title III.

50. The actions of Defendants were and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Plaintiffs Donovan, Dillon, and Oberholzer and members of CCB have been and continue to be denied full and equal access to Palladio 16's services. Defendants have failed to take the necessary steps to provide full and equal access to blind and visually-impaired patrons, and Defendants' violations of the ADA are ongoing. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

51. Plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188.

WHEREFORE, Plaintiffs request relief as outlined below.

### SECOND CLAIM FOR RELIEF
### (California Unruh Civil Rights Act California Civil Code §§ 51 & 52 – Against All Defendants)

52. Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

53. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

54. Palladio 16 is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the California Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.*

55. The Unruh Act provides, inter alia, that a violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*, also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

56.     Defendant's discriminatory conduct alleged herein includes, inter alia, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

57.     The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*  Plaintiffs Donovan, Dillon, and Oberholzer and members of CCB have been and continue to be denied full and equal access to Palladio 16's services.  Defendants have failed to take the necessary steps to provide full and equal access to blind and visually-impaired patrons, and Defendants' violations of the Unruh Act are ongoing.  Therefore Plaintiffs are entitled to injunctive relief remedying the discrimination pursuant to California Civil Code § 52.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

58.     Plaintiffs Oberholzer, Dillon, and Donovan are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense in violation of the Unruh Act.  Cal. Civ. Code § 52(b).

WHEREFORE, Plaintiffs request relief as outlined below.

**THIRD CLAIM FOR RELIEF**
**(California Disabled Persons Act, California Civil Code  §§ 54-54.3 –**
**Against All Defendants)**

59.     Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

60.     California Civil Code §§ 54-54.3 guarantee, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public receive, to accommodations, advantages, facilities, and privileges of all "places of public accommodation" and "other places to which the general public is invited" within the jurisdiction of California. Cal. Civ. Code § 54.1(a)(1).

61.     Any violation of the ADA is also a violation of California Civil Code § 54.1. Cal. Civ. Code § 54.1(d).

62. The Palladio 16 is a "place of public accommodation" and a "place to which members of the general public are invited" under California Civil Code 54.1(a)(1).

63. Defendants are violating California Civil Code §§ 54-54.3 in that their actions are a violation of the ADA.

64. Plaintiffs thus seek declaratory relief based on Defendants' violation of Plaintiffs' rights under California Civil Code §§ 54-54.3.

65. Plaintiffs Donovan, Dillon, and Oberholzer are also entitled to statutory minimum damages for each violation of California Civil Code §§ 54-54.3(a).

66. Plaintiffs do not seek relief under California Civil Code § 55.

WHEREFORE, Plaintiffs request relief as outlined below.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief on Behalf of Plaintiffs – Against All Defendants)**

67. Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

68. An actual controversy has arisen and now exists between the parties in that A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

69. Plaintiffs contend, and are informed and believe that Defendants deny, that by failing to maintain and provide audio description equipment and services, Defendants fail to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, the California Unruh Civil Rights Act, Cal. Civ. Code § 51, and the California Disabled Persons Act, Cal. Civ. Code §§ 54-54.3.

WHEREFORE, Plaintiffs request relief as outlined below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. A permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* and the Unruh Civil Rights Act Cal. Civ. Code §§ 51, 52 requiring Defendants to take the steps necessary to provide properly functioning audio

description equipment and services in their movie theaters for Plaintiffs and other individuals who are blind or visually-impaired.

2. A declaration that Defendants discriminate against blind and visually-impaired persons by failing to provide Plaintiffs and other blind and visually-impaired individuals with full and equal access to the services, facilities, privileges, advantages, and accommodations of the services at Palladio 16 in violation of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*, the Unruh Civil Rights Act, California Civil Code §§ 51-52, and the California Disabled Persons Act, California Civil Code §54-54.3.

3. An order awarding Plaintiffs reasonable attorneys' fees as authorized by 42 U.S.C. §§ 12188, 12205, California Civil Code § 52, and California Civil Code § 54.3.

4. For Plaintiffs Donovan, Dillon, and Oberholzer, damages in an amount to be determined by proof, including all applicable statutory damages pursuant to California Civil Code § 52(a) or California Civil Code § 54.3.

5. Such other and further relief as this Court deems just and proper.

DATED: July 9, 2019          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael S. Nunez*
     Michael S. Nunez

Attorneys for Plaintiffs